UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ROOSEVELT HANNAH,

                    Petitioner,

-vs-                                     Case No.  8:04-cv-1072-T-24EAJ

JAMES V. CROSBY,

                    Respondent.

_____/

## ORDER

    This cause is before the Court on Petitioner Roosevelt Hannah (Hannah's) 28 U.S.C. §2254 petition for writ of habeas corpus. Hannah challenges his convictions and sentences entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.

BACKGROUND

    On May 13, 1999, Hannah was charged by information with carjacking with a firearm, armed robbery with a firearm, and possession of a firearm by a convicted felon.  The victim was Timmy Charles Blanton, Jr.

    Hannah was tried by jury on the first two counts and was convicted as charged. The felon in possession of a firearm charge was subsequently nolle prossed.  Hannah was sentenced, as a violent career criminal, to concurrent life sentences on the first two counts.

Hannah appealed, challenging the sufficiency of the evidence to support his convictions. The state district court of appeal per curiam affirmed the convictions and sentences. *Hannah v. State*, 780 So. 2d 70 (Fla. 2d DCA 2000).

On March 5, 2001, Hannah filed a motion to correct illegal sentence.  When that motion was unsuccessful, Hannah filed,  on September 17, 2001, a  Rule 3.850 motion for post-conviction relief.  On December 3, 2001, Hannah filed a second Rule 3.850 motion for post-conviction relief, raising the same grounds raised in  his September 17, 2001 motion. The state trial court summarily denied these motions on June 24, 2002. (See the state trial court's order denying the Rule 3.850 motions attached).

Hannah appealed the state trial court order denying the Rule 3.850 motions.  On October 11, 2002, the state district court of appeal per curiam affirmed the denial of Rule 3.850 relief. *Hannah v. State*, 833 So. 2d 131 (Fla. 2d DCA 2002). The mandate issued on November 5, 2002.

Hannah filed several motions to correct sentencing error, all of which were denied and per curiam affirmed on appeal.

Hannah then timely-filed the present petition for writ of habeas corpus, raising four grounds for relief.

Standard of Review

Because Hannah filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003); *Maharaj v. Sec'y of Dept. of*

*Corrections*, 304 F.3d 1345, 1346 (11th Cir. 2002).  The AEDPA "establishes a more

deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d

1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure

that state-court convictions are given effect to the extent possible under law." *Bell v.

Cone*, 535 U.S. 685, 693 (2002); *see, Bell v. Cone*, 2005 WL 123827 (U.S. Jan. 24,

2005) (habeas court's standard for evaluating state-court ruling is highly deferential,

which demands that state-court decisions be given benefit of the doubt)[citing 28

U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim

adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Price v. Vincent*, 123 S.Ct. 1848, 1852-53 (2003); *Clark v.

Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003); *Harrell v. Butterworth*, 251 F.3d 926,

930 (11th Cir. 2001).  "Clearly established Federal law" is the governing legal principle,

not the dicta, set forth by the United States Supreme Court at the time the state court

issues its decision.  *Lockyer v. Andrade*, 538 U.S.63, 71-72 (2003).   Where no

Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said

that  the state court's conclusion is contrary to clearly established governing federal

law. *Mitchell v. Esparza*, 124 S.Ct. 7, 10 (2003); *Clark v. Crosby*, 335 F.3d at 1308-10;

*Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Mitchell v. Esparza*, 124 S.Ct. at 10 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). *See also Price v. Vincent*, 123 S.Ct. at 1853; *Lockyer v. Andrade*, 538 U.S. at 75-77. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. *Early v. Parker*, 537 U.S. 3, 8 (2002); *Mitchell v. Esparza*, 124 S.Ct. at 10; *Parker v. Secy of Dept. of Corrections*, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. at 75-77; *Williams*, 529 U.S. at 409-10;

*Penry v. Johnson*, 532 U.S. at 791-792; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002); *Mitchell v. Esparza*, 124 S.Ct. at 11-12; *Price v. Vincent*, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. *See Holland v. Jackson*, 124 S.Ct. 2736, 2737-2738 (2004) (citing *Yarborough v. Gentry*, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); *cf. Bell v. Cone*, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). *Williams v. Taylor*, 529 U.S. at 433-34.

Exhaustion of State Court Remedies

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ."  28 U.S.C. 2254(b)(1)(A); *Snowden*

*v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  *See also, Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845).  This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance.  *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state

remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances.  First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice,"  Hannah must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). Hannah must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446,

451 (2000); *Henderson v. Campbell*, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. 478,  495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent").  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial."  *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup*, 513 U.S. at 324.  This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit

the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

No Presumption that State Court Ignored Its Procedural Rules

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman*, 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

DISCUSSION

A review of the record demonstrates that, for the following reasons, Hannah's petition must be **DENIED**.

Ground One

Hannah contends that the state trial court violated his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process by denying his motion for judgment of acquittal.  He alleges that the evidence was insufficient to find him guilty beyond a reasonable doubt because the "eyewitness identification" by the victim was flawed. Hannah raised this argument on direct appeal.

Ground one was not preserved for appeal in accordance with state law. The contemporaneous objection rule requires not only that a timely objection be made, *see*,

*e.g.*, *Terry v. State*, 668 So. 2d 954 (Fla. 1996); *Malloy v. State*, 382 So. 2d 1190 (Fla.

1979), but also, that the specific grounds for the objection be stated. *See, e.g.*, *Terry*;

*Tillman v. State*, 471 So. 2d 32 (Fla. 1985). The proper objection must be made at the

time the challenged-evidence is presented, or else the objection is waived, even if a

pretrial motion raising the objection was previously made and denied. *See Terry*; *Feller*

*v. State*, 637 So. 2d 911 (Fla. 1994); *Grant v. State*, 555 So. 2d 435 (Fla. 3d DCA

1990); *Anderson v. State*, 549 So. 2d 807 (Fla. 5th DCA 1989), *review denied*, 560 So.

2d 232 (Fla. 1990); *Correll v. State*, 523 So. 2d 562 (Fla.), *cert. denied*, 488 U.S. 871

(1988); *Roban v. State*, 384 So. 2d 683 (Fla. 4th DCA), *review denied*, 392 So. 2d

1378 (Fla. 1980); *Moore v. State*, 418 So. 2d 435 (Fla. 3d DCA 1982).

To preserve an argument for appeal, the argument must be asserted as the

legal ground for the objection, exception, or motion in the state trial court. *See Archer*

*v. State*, 613 So. 2d 446, 448 (Fla. 1993); *Steinhorst v. State*, 412 So. 2d 332, 338

(Fla. 1982). Florida Rule of Criminal Procedure 3.380 requires that a motion for

judgment of acquittal "*fully* set forth the grounds on which it is based." *See* Fla. R. Crim.

Pro. 3.380(b) (emphasis added); *Woods v. State*, 733 So. 2d 980, 984 (Fla. 1999). A

"boilerplate" motion for judgment of acquittal is insufficient to preserve a sufficiency of

the evidence issue. *See id.* In this case, trial counsel made only a "boilerplate" motion

for judgment of acquittal.[1]  Therefore, the issue of sufficiency of the evidence was not preserved for appeal.

However, even if this issue had been preserved, it is without merit. Federal habeas relief is authorized on a claim of insufficient evidence only if, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime. *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979).

In his direct appeal argument, Hannah confused the question of whether the victim's identification testimony was relevant, and therefore admissible, with the question of whether the identification testimony was legally sufficient to establish Hannah's guilt. The victim's identification testimony was relevant because it was "evidence tending to prove or disprove a material fact," § 90.401, Fla. Stat. (1999); therefore, under state law, it was admissible in the absence of any objection to its admission. § 90.402, Fla. Stat. (1999).

Hannah's failure to challenge the admissibility of his identification by the victim in the state trial court, as required by Section 924.051, Florida Statutes (1999), precluded his doing so on appeal. *See, e.g.*, *Chojnowski v. State*, 705 So. 2d 915 (Fla. 2d DCA 1997); *Hunter v. State*, 700 So. 2d 728 (Fla. 5th DCA 1997), *review denied*,

---

[1] Counsel argued:

Judge, at this time, the defense would move for a judgment of acquittal based on the evidence, even in the light most favorable to the state.  They haven't proven their case. Regarding Count I, carjacking with a firearm, if I may review for one moment.  Judge, may I just confer with the co-counsel? . . . Simply based on the evidence adduced by the state at trial it would be the defense's contention that they have not met their burden regarding Counts I or II.  I've conferred with co-counsel.  I do not see a whole lot more to argue, regarding that . . . So we'll leave it and stand on that.  (Exhibit A 117-118, T 260-261)

717 So. 2d 532 (Fla. 1998); *Johnson v. State*, 697 So. 2d 1245 (Fla.1st DCA), *review denied*, 703 So. 2d 476 (Fla. 1997).

Blanton's identification of Hannah was admitted without objection; therefore, any weaknesses in that identification evidence related only to the weight that the jury gave the identification evidence. Defense counsel was free to, and did, argue those weaknesses; and argued that Blanton's identification should be given little credence. However, the weight of the evidence <u>could not be challenged on appeal under state law.</u> *See Tibbs v.State*, 397 So. 2d 1120 (Fla. 1981), *aff'd*, 457 U.S. 31 (1982).

Furthermore, the cases on which Hannah relied in support of his argument on direct appeal did not address the sufficiency of the evidence based on eyewitness identification.[2]

The evidence against Hannah was legally sufficient: His guilt was proven by Blanton's testimony, which established all of the elements of the offenses for which Hannah was tried. Additionally, contrary to Hannah's claim, there *was* physical evidence linking Hannah to Blanton's car, to wit: the videotape, which showed Hannah exiting Blanton's car. Finally, Blanton's identification of Hannah was not contaminated by an impermissibly or unduly tainted procedure. Blanton testified that he was looking "right at his assailant" when the man asked him for a ride, and Blanton saw the

---

[2]  The opinion in *Baxter v. State*, 355 So. 2d 1234 (Fla. 2d DCA), *cert. denied*, 365 So. 2d 709 (Fla. 1978), clearly states that the defendant filed a pretrial motion to suppress the challenged identification evidence. *Howard v. State*, 458 So. 2d 407 (Fla. 4th DCA 1984), *overruled in part, Davis v. State*, 516 So. 2d 953 (Fla. 4th DCA 1986), does not indicate how the issue concerning the victim's identification arose, but, in all of the cases cited in *Howard*, the issue of the *admissibility* of the identification evidence was raised in the state trial court.

assailant's face (A 34, T 177).[3]  Blanton stared at the man's face for a few seconds, and "I got a really good look at his face." (A 44, T 187). Once the assailant "pulled a gun on him," Blanton turned his head and looked away, but he then kept looking back at the man (A 48, T 191).

Furthermore, when the police took Blanton to the store in which Hannah had taken refuge, all Blanton knew was that his car had ostensibly been located. Nothing in the record indicates that a suspect's being at the store was discussed.  It was therefore conceivable that the carjacker could have abandoned the car at the store and left the premises. Nevertheless, as the squad car in which Blanton was riding pulled into the parking lot at the store, Blanton saw Hannah inside the store and, without hesitation, pointed Hannah out and identified him as the carjacker. This identification took place before Hannah had been arrested and handcuffed. Accordingly, there was no "showup," and there was nothing unduly suggestive about what took place. Whether Hannah was the only individual in the store who fit the description Blanton had given the police was not established by the record.  However, even if there were other people in the store who matched Hannah's description, there was no indication that Blanton was able to see all of the people inside the store when he first identified Hannah.

Even if Blanton's identification of Hannah at the store could be considered a showup,  and "although '[t]he practice of showing suspects singly to persons for the

---

[3] Respondent filed the trial transcript as Exhibit A.  Respondent renumbered, by hand, the trial transcript pages as "A"  and a page number at the bottom of each of the trial transcript pages.  Citations to the trial transcript will be designated with the Respondent's "A" number and the "T" trial transcript page number found at the top right hand corner of the page.

purpose of identification, and not as part of a lineup has been widely condemned,' *Stovall v. Denno*, 388 U.S. 293, 302 (1967), we recognize exigent circumstances such as the interest to be served by rapid crime solution may justify a one-on-one confrontation." *United States v. Rice*, 652 F. 2d 521, 528 (5th Cir. 1981). Moreover, there is no constitutional right to a lineup. *United States v. McGhee*, 488 F. 2d 781, 786 (5th Cir.), *cert. denied*, 417 U.S. 971 (1974).

"[A] claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it...." *Stovall v. Denno*, 388 U.S. 293, 302 (1967). For a confrontation to violate due process, it must be *both* "unnecessarily suggestive and conducive to irreparable mistaken identification." *Id.* "In the final analysis 'reliability is the linchpin in determining the admissibility of identification testimony.' *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253, 53 L. Ed. 2d 140, 154 (1977)." *United States v. Bazan*, 637 F. 2d 363, 365 (5th Cir.), *cert. denied*, 451 U.S. 993 (1981).

The factors to be considered in evaluating the likelihood of misidentification include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention; the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *Brathwaite*, 432 U.S. at 114-15.

In the present case, Blanton's identification of Hannah was made perhaps 30 minutes after the crime and immediately upon Blanton's "spotting" Hannah inside a

convenience store, without any suggestion having been made to him beforehand that his assailant was present in the store; and Blanton was completely certain of his identification. Although the time period during which Blanton was able to view his assailant was brief, amounting to only several seconds, Blanton testified that he had gotten a good look at his assailant's face, had stared at the man's face for a few seconds, and had thereafter looked back at his assailant repeatedly. He was able to describe his assailant in fair detail, describing his hair (or, in this case, the lack of it) and the color of his clothing, as well as his race, and Hannah fit Blanton's description of his assailant.

Consideration of the *Biggers* factors establishes that there was not a substantial likelihood of irreparable misidentification given the totality of the circumstances in the instant case. Consequently, the jury could properly rely on Blanton's identification of his assailant, in addition to the testimony of the police officers and the convenience store videotape to convict Hannah. The evidence presented at trial was sufficient to support Hannah's convictions.  Ground one does not warrant habeas corpus relief.

Ground Two

Hannah contends that he was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel and due process

> when his counsel failed to file a motion to suppress the illegal show-up
> identification that rendered the identification tainted and likely to cause
> irreparable harm.  The out of court show up was substantially prejudicial
> in that it undermined the reliability of the eyewitness identification and
> presented a loss of Petitioner's right to due process.

Under *Strickland*, a defendant must establish two components in order to demonstrate that counsel was ineffective: (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. As to the second prong, the defendant must establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* Moreover, a court must be highly deferential when evaluating the performance of defense counsel, and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." 466 U.S. at 689.

Every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Ground two is without merit, for the reasons explained above. Hannah has failed to show prejudice resulting from his trial counsel's failure to move to suppress the out-of-court identification and is entitled to no relief under *Strickland.* Ground two does not warrant habeas corpus relief.

Ground Three

Hannah alleges that he was denied his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to equal protection and due

process when his trial counsel failed to request that the jury be polled.  Hannah contends that he observed "some form of conflict" among the jurors.  He claims that he requested his attorney to ask the judge to poll the jury but counsel did not do so.

The state trial court correctly ruled that, because Hannah had given no reason why the jury should have been polled and had failed to allege that the outcome of the proceeding would have been different had the jury been polled, Hannah had failed to meet the prejudice prong of *Strickland*.  Furthermore, this claim does not present a federal issue because there is no constitutional right to have a jury polled. *Cabberiza v. Moore*, 217 F. 3d 1329, 1336-1337 (11th Cir. 2000), *cert. denied*, 531 U.S. 1170, (2001).  Ground three does not warrant habeas corpus relief.

Ground Four

Hannah contends that he was denied his Sixth Amendment right to a fair trial when the prosecutor committed fundamental error by vouching for state witnesses and placing his personal beliefs into the trial.

Ground four is procedurally barred in this Court because the issue was procedurally barred in state court.  Hannah could and should have raised the issue on direct appeal.  *See*, e.g., *Rutherford v. State*, 727 So. 2d 216, 218 n. 2 (Fla. 1998). Hannah has not shown cause and prejudice to overcome the procedural bar and has not shown that a fundamental miscarriage of justice will occur if this Court does not reach the merits of the claim.  Ground four does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Hannah's petition for writ of habeas corpus is denied, with prejudice.  The

Clerk is directed to enter judgment against Hannah and to close this case.

ORDERED at Tampa, Florida, on September 26, 2005.

_Susan C. Bucklew_
SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Roosevelt Hannah
Attachment (Order Denying Motions for Post-conviction Relief)